Good morning everyone and welcome to the Ninth Circuit. We'll take the cases in the order on the calendar. We have several cases submitted on the briefs. The first case is Miguel Diaz-Torres v. William Barr. That's submitted on the briefs. The next one is Kiaso Lin v. Barr. That one is submitted. The next case is Bobby Daryl Colbert v. Ron Haines. Which is submitted. And our first case for argument is S. Scott James v. Noel James v. Safeguard Properties. Counsel? Good morning, Your Honor. And may it please the Court, Beth Terrell on behalf of Plaintiffs Scott and Noel James. I'd like to reserve five minutes for rebuttal if I could. Please watch your clock. Thank you. Like thousands of other Washington residents, Plaintiffs Scott and Noel James were locked out of their Washington home after they had defaulted on their mortgage with Bank of America, but before the foreclosure sale had been completed. Safeguard changed the locks on the James' home in August 2015, a little less than a year before the Washington State Supreme Court handed down Jordan v. Nation Star, which held that that lock change had actually taken possession of the house and violated Washington state law. There are two major issues here today. The first is the threshold issue of standing. And here the question is, did the district court err when it dismissed the James' claim that had already been added to the Fourth Amendment complaint when it found that Mr. Bund lacked standing? The second issue is whether or not the district court committed error when it granted summary judgment on the Consumer Protection Act claims, finding that Safeguard had exercised good faith in relying on existing or arguable state law when it changed those locks prior to the Jordan court issuing its opinion in 2016. Can I ask you about standing? You agree that Mr. Bund did not have standing at the time the complaint was filed, correct? That is correct. At what point did he establish standing? With the Fourth Amendment complaint or was it earlier than that? So with Mr. Bund, his standing was shown to have not existed because of the ownership of the property. So he never cured his lack of standing? He did not. However, the lack of standing was cured by the addition of the James' in the Fourth Amendment complaint. And that's not a novel way to cure standing. It's been done a number of different times, including by the United States Supreme Court in the Mulaney case. That's not exactly on point, right? The Supreme Court didn't focus on whether the agents had standing or not. They just said, well, now that the real party in interest is joined, we don't have to worry about the issue. They didn't really provide us with any reasoning as to, first there wasn't standing, but now there is. I think the better case than perhaps is the Newman-Green case, where there was additional analysis, where the court actually noted that although in general there's a rule that jurisdiction must exist at the beginning of the complaint, there are exceptions to that rule. So what happened in Newman-Green? Because that also wasn't exactly on point, right? That was one where the acquired property, is that right? Because we have some very interesting case law, both the Supreme Court and our cases, some of which which the district court identified, say you look at the time of filing to determine whether there's jurisdiction or not, and everything else is a nullity. Leerbo is one of those cases. And then other cases say, well, although the general rule is you look at the time of filing, there are exceptions. But I didn't see an exception that was exactly on point. Well, I'd like to talk about the Northstar case, Your Honor, because that's this court's case. And that was a property interest, right? Where the plaintiff lacked the correct interest in property and then gained it a few months after filing. Is that the one? That's correct. There, what happened at the district court level, the plaintiff was found to lack standing because they didn't have, they didn't actually own shares in the fund. And so the court said, go get the assignment from the investors and then you can come back and amend. And that's what happened. And it was found to cure that jurisdictional defect. You didn't get an assignment here, did you? I mean, you could have gotten, or I shouldn't say you, but Bund could have gotten an assignment, right? Wasn't it the trust that owned the property, but he sued on behalf of the estate? That's correct. Couldn't he have gotten an assignment from the trust to the estate? And then maybe he would have fallen within the exception under Northstar. Perhaps. He could have. We chose not to go that route. We thought we had cured his standing issue based on advice from estate counsel. The district court disagreed. Let me talk about Northstar, though. I don't believe that what the jurisprudence is at this point is only finding that particular factual scenarios satisfy the exception to the general rule. And the reason I say that is based on the Northstar opinion itself. What this court did in Northstar was sort of survey the landscape to say, okay, there's this general rule, and then here are these exceptions that have been developed. One was Mulaney, where what they did is they added a party. Then there's Newman. Actually, they dismissed a dispensable party. Then there's Newman Green, where a party was added. And then when you look through the rest of Northstar, you find that they look to the Hackner v. Guarantee Trust Company, 2nd Circuit, 1941, that says, look, here we have a problem with jurisdiction from the beginning of the complaint. The plaintiff before us doesn't have enough amount in controversy. We're going to allow amendment to add a plaintiff that clearly has enough. So there's addition of a party to cure that jurisdictional defect, which goes all the way back to the beginning of the complaint. So again, there is not a hard and fast rule that you must have jurisdiction from the beginning of the case in every scenario. But then where are the limitations? Because, I mean, clearly you must be right, because we've got, we can cite two, four, five cases, but it seems, and I think this is what Judge Yakuta was mentioning, this seems to be yet another exception. And so what do we do in these cases? Do we say, well, okay, the general rule doesn't stand. We've recognized a couple other exceptions. This one isn't exactly on point, but we're going to go ahead and recognize it as another exception. Well, I think here's what this court already held in Northstar. What page are you reading on? I'm looking at page 1046. It said, Morongo, talking about the dissent, does contain the broad statement that subject matter jurisdiction must exist as of the time the action is commenced, and that a lack of subject matter jurisdiction at the outset cannot be cured subsequently. It is now clear, if it was not then, that this rule is more nuanced than the inflexibility suggested by its language, both as it relates to curing jurisdictional defects through supplemental pleadings, which was what was done in Northstar, right, and also jurisdiction by the substitution, addition, or elimination of a party. And then it cites these cases I've been talking about. Newman-Green, which was dismissal, which was addition of a dispensable party so that you could retain jurisdiction. Mulaney v. Anderson, addition of a party. And then California Credit Union League v. City of Anaheim, again, addition of a party so that jurisdictional issues could be cured. So the addition of a party... In California Credit, though, the... So in none of those cases, in either Mulaney or California Credit, where there was an addition of the party, was the case that the first party lacked standing. It was that there was a jurisdictional defect, you needed another party, and that party was added later. Here, the first party, as in Laraboe, lacked standing. And so that party's gone, and now a new party is being added. A different case, which I didn't see any case exactly on point. So here's why I think Laraboe doesn't apply. In Laraboe, there wasn't a second plaintiff before the court at the time the standing was found to be deficient. In this case, the Jameses had already been added by stipulation of safeguard, and good cause had been found to exist for adding the Jameses, in part because there was a concern about Bunn's standing. So they were added precisely for the same reasons that parties were added in Mulaney and in the Hacker case and in California Credit. So just so I'm clear, when they stipulated to add the new party, there already was a concern about standing at that time? It was specifically to defer to resolve that question? Because that was one of the concerns I had. I don't know how this matches up legally, but I don't know at what point plaintiff's counsel, and I don't know if you represented them below, but at some point plaintiff's counsel presumably figures out, hey, we've got a problem. Was that raised to the court, or did it kind of just linger on for several years? So I'd like to direct the court to ER-598, which is the stipulation and order where the Jameses were added. And the language says, the new representative plaintiffs, that's the Jameses, identified in plaintiff's proposed Fourth Amendment complaint are not members of the Jordan class or any similar certified class. Good cause exists to join these new representative plaintiffs to avoid any possible prejudice to certified class members' claims if Mr. Bunn, the current sole representative of the class, is dismissed as a class representative. At the time, there was concern that because he was a member of both classes… But that doesn't seem to hit the jurisdictional point. That says if he's dismissed as the class representative, it doesn't seem to hit the standing, to dismiss because of standing. The concern was that he would not have standing because he would accept the settlement in the Jordan case and no longer have a claim. And so we came forward… But that still seems different to me than what we have here. It doesn't seem to be addressing the issue of whether there was a concern of whether he even had standing when the case was filed. It was more a question of whether he was going to accept a separate settlement and therefore be dismissed as a class. That's correct. But again, the distinction with Larbo is here, the Jameses were added to the case before Mr. Bunn's standing issue was determined and he was dismissed. So they were standing before the court, they had claims before the court, and they were dismissed rather than allowing to proceed. In Larbo, there was no one before the court at all. And to push back on the notion that there must be jurisdiction all the way at the beginning, that line of cases from Mullaney and Hackner and Northstar and California Credit Union all stand for the proposition. There are exceptions to the general rule. And this is that exception, which is adding a party through amendment. Does that make Morongo a dead letter? Morongo stated the rule in absolute terms. I guess Northstar says, well, we take a more nuanced understanding. But doesn't that make Morongo just a dead letter? Well, what Northstar said is that Morongo found that there wasn't a particular type of exception, but that didn't mean that there weren't other examples like this one, the amendment of a party, which goes all the way back to Mullaney. Did you want to save time? I'd like to save some time. May it please the court, Leonid Feller on behalf of Safeguard. I think the rule, with the possible exception of Northstar, which is a very limited, very unique situation, it's always good when folks keep reading what the court actually said and not stop where they want to. It is always true that at the beginning of a suit, a party, that original party, must have standing. There may be mootness exceptions later where that party loses standing. They may be dispensable or indispensable parties in diversity cases that are dismissed. But the rule, without fail, is that there must be a party at the beginning that has standing. So Northstar didn't have standing at the beginning, if I'm understanding. So Northstar, what happened in Northstar, and to your question, Judge Nelson, in Northstar, it was very clear from the beginning exactly what was going on. So in Northstar, it's a security suit, plaintiff comes before the court, court says, hey, you don't own the security, you don't have standing, and says, go out, get the security, come back. And so from the very beginning, the court knew there was a standing issue. The court dismissed the complaint. The plaintiff went, acquired the security, had standing, came back, and filed a supplemental pleading. And the key language in Northstar, and the reason we know that Northstar doesn't do anything to the Morongo Rule or the, I pronounce it LIRBO, I don't know if that's right or not, but what Northstar says is, quote, nevertheless, we need not belabor this issue because in order to decide this case, it is enough to say that the rule as stated in Morongo does not extend to supplemental pleadings filed pursuant to Rule 15. And an amended complaint is not a supplemental pleading. Well, that's how the court ended up treating. Well, it was an amended complaint in Northstar, so it was an amended complaint in this case as well. So we could deem it to be 15D, supplemental pleading. I personally, I don't see how that makes any difference at all because no amendment or supplemental pleading changed the facts at the beginning of the case. Correct. It just recognizes that there's been a change in facts subsequently. So in both cases, there was no standing at the commencement of the action. And the court said, well, we'll deem the change in facts to be okay pursuant to Rule 15D, which doesn't make a whole lot of sense. But that's our case. But I think the difference here and the difference in every other case we talked about is that in Northstar, the district court knew exactly what it was doing. What difference does that make for jurisdictional purposes? I mean, either you have jurisdiction at the commencement or you don't. And in Northstar, there was no jurisdiction at the commencement of the action. The court may have known about it. I don't see how that makes any difference to our analysis. Again, I obviously wasn't before the court in Northstar, but I would not take Northstar, which is one case, and I want to go through all of the other cases and say that that narrow exception, which by its terms, that court, subject to a dissent, by the way, said the only thing we are saying here, and I respect that you disagree and you don't think it makes a difference, but it seems that court did think that for purposes of a supplemental pleading under Rule 15D, that that's okay. And there we are really talking about a situation of incredible form over substance. The only difference in that case is whether that plaintiff then filed an amended complaint. Again, same plaintiff, same allegation, same fact pattern, now has acquired the securities, filed an amended complaint we're calling a supplemental pleading, or filed a new lawsuit. Remember, the dismissal in this case is without prejudice. So can I ask a question? You raise a unique argument, which is if we were to agree with you on the lack of standing, that we should not vacate the prior orders. Help me understand that, because it seems to me that if we vacate, and I don't know if we will or not, but if we dismissed for lack of standing, wouldn't it just seem logical to follow that you would vacate the prior orders? I don't disagree that it seems logical. I think there's two reasons why you may not want to. One being that you, when they file a new claim, you want to take benefit of the good orders. No, it's a district court ruling. Well, so the answer is yes, but the reason is that that hasn't happened yet. And so I think uniformly the law of this circuit is doing that now would be an advisory opinion, because nobody's rights are impacted. If they don't have standing, they didn't have standing at the outset. They don't have standing to be in front of this court to say we want you to vacate rulings. They also don't represent the class, right? The Jameses were never appointed as class reps. Ms. Terrell and her colleagues were never appointed as class colleagues. They plainly don't have standing to ask this court to do anything with respect to a putative class that was first certified and then decertified. How does that make sense? Because if your argument is the court didn't have jurisdiction to do the things that it did, somebody, you can't benefit from that later. I don't think we do benefit. Right. I don't think there's any benefit to us. Right. So. So, again, so the two points I wanted to make. So just following up on Judge Hunsaker's point, I think the court has said or we've said that everything that's done by the court is an only after. Is that what you're saying? So the district court did. There was no jurisdiction at the commencement of the action per hypothesis. That means everything the district court did from that point on was a nullity, including granting the amended complaint, which I want to come back to in a second. So, yes, that is absolutely the law. The question is, OK, knowing that to be true. What does this court do about any subsequent orders if it finds that there is no standing? And the United States Supreme Court in 1994 in a case called U.S. Bancorp said judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacator. And so, again, it's out there. It's it's a district court. I mean, it's still out there even if we vacate it. That's true. I've had that happen. Parties say opinions. I don't know how good it is. Sure. I mean, the question is, who are we vacating it on behalf of and for what purpose? Right. And that that goes to the advisory opinion portion of it. We have we certainly can't be vacating it on behalf of the class. We just there's no one here before you. Right. I don't think this court can sui sponte decide, OK, on behalf of. Well, it's not sui sponte. We'd say there's no standing. Therefore, there's no standing to do anything in the case. Therefore, the entire thing. It doesn't seem like a stretch. So I didn't want to belabor it. I want to give you a chance. I mean, I guess the only thing I would say is then I guess there would be a rule that in every case where standing is subsequently found, we go and we actually, you know, foster the Seventh Circuit decision that Learbo relied on. That case had been going on for six years. And that that was before they found out that there was no standing. Did they vacate everything? No, that's my point. So that I don't think there is a rule that any time an appellate court finds there was lack of standing. We are also going to, you know, check the box and say, OK, and everything the district court, every opinion issued, everything that happened is going to be vacated. It's out there. It's a district court opinion. It doesn't have any precedential value. And if at some point there's there's another suit brought, then we can we can deal with it. I wanted to move on to the good faith. Sure. Exception or not exception, but the defense is. Is that a question of fact or a question of law or mixed? It is mixed. I think what the district court here found is that there is no there is no question of fact. There is no dispute of material fact here for two reasons. One is you have a threshold judicial estoppel issue. And candidly, there there is. I don't even I think there was one sentence about it in an appellant's reply brief. Let me just go through some of some of the things Miss Terrell and her colleagues said about the law prior to the Jordan decision. This is back in 2016 when Mr. Bund was trying to amend his complaint after the Jordan decision. Quote, Mr. Bund argues that the further amendment of his complaint is justified by a change in law. That's the record at 742. In responding to safeguards motion to dismiss after the Washington Supreme Court decided Jordan, appellants argued, quote, Jordan signals a significant and critical change in the law by the Washington Supreme Court. That's a supplemental record at 1120. The district court agreed, quote, Jordan represents a significant development in the law of Washington. That's the record at 747. In my personal favorite, in the decertification argument in October of 2018, Mr. Gatins, Miss Terrell's colleague, argued, quote, I was the first attorney probably in the nation to challenge that provision and went up to the Supreme Court on it. That's the record in 89. And I mean, I say maybe my favorite agree with you on this point. Is that definitive in your mind? You can't go and tell all these courts. And the last one I was going to do was their fee petition in the Jordan case after Jordan was settled. So, I mean, I understand that you that you believe that that's definitive on a judicial estoppel point. But let's say we agree with you on a judicial estoppel point. Is that definitive as to the good faith defense? Yeah, I think it has to be right. If they have argued that the law prior to the Jordan decision was there is no law out there that you can't preserve properties. And I do want to make sure I save a minute or two to talk about what's actually factually going on in this case. If there is no law out there and they've argued that time and time again, and they've argued that in their fee petition, and they've argued this is a significant change to law. If they argued we're the first ones who ever went to the Supreme Court on this. How do you say that safeguard isn't acting in good faith when it's doing what it's been doing for 30 years, when it's doing what federal regulations require, when it's doing what local ordinances require, when it has when the attorney general not only has there been a three year investigation with no action taken, and during the course of that investigation, absolutely no indication that the underlying conduct that the company's entire business is illegal, basically. And where in 2015, about six months before Jordan, the Washington attorney general said, this conduct is legal. It may change after the Jordan decision. How about they argue that even if there is a good faith defense, it doesn't necessarily apply to their deceptive claim under the CPA? What's your response to that? Sure. So a couple of things. One is that entire argument is based on a 1999 district court opinion, a case called Watkins, 57F2nd1102, where the district court didn't even say that exists. The district court didn't even say that's a thing. It was responding, in fact, in that case to the plaintiff saying, well, gee, there's no good faith exception to deceptive conduct. And like here, the court said, well, that may or may not be true. It doesn't matter. What we're talking about here is unfair conduct. Well, has the Supreme Court, has the Washington Supreme Court addressed the deceptive conduct and said whether there was a good faith defense to that? So the Perry decision talks about unfair conduct. Again, there have been literally dozens and dozens of Washington opinions since then. I mean, sort of the premise on deceptive conduct is it's hard, right, to have conduct that's deceptive, right, because deceptive sort of implies with it some level of malice and intent and wrongdoing, and then still be acting in good faith. It makes sense that conduct may, nobody meant to do anything wrong, but it's unfair, but you were acting under excessive. So you're not arguing that the good faith defense applies to deceptive allegations? No, I think it doesn't matter here. I think here the district court, in deciding our motion to dismiss, held that they hadn't pled deceptive conduct. And, in fact, the first time they even raised that issue is in their reply papers. I think it's waived. I think what the Supreme Court did, what they pled, what they tried to plead as deception, because remember, this is running low on time, but remember, they want a class action here, right? This is about a class action. And if you're pleading deception, if you're pleading that an individual homeowner was deceived, you can't have a class on this. So the Washington Supreme Court in Hankman Ridge, I think it is, defines deceptive as meaning something like likely to deceive many members of the public. Right. And so their argument is that these entry under the entry provision and locking the house deceives homeowners into thinking they have no ability or right to go back into the house. That's, if I understand the argument correctly. Sure, and they want to argue that now, and they tried to argue that. And so that would not have a good faith defense, the argument goes, because there's not immense right. It's whether it would have the likelihood to deceive a large number of the public. Right. So the first problem is the district court found they didn't plead that, right? So this is the record at 463. What they pled in the complaint for deception, again, because they want to try and get a class, is that the deception here is that folks didn't know the lock was being changed. That was the extent of the deception that they pled in their fourth amended complaint. At the motion to dismiss, the district court said, that's not enough. You haven't pled deception. I'm going to let the case go forward, though, only on the unfair prong. If you look at their appeal in this case, that's never been appealed. It's raised for the first time in their reply brief. Okay. Again, I just, I very, very quickly, I've got 20 seconds, I just want to make, this is not a case about people being locked out of their homes who are living there. That's not this case. The Jameses, we have a declaration. We have them on tape. They are recorded saying, we're in default. The house is being foreclosed on. We're out. We did this analysis when we had a class. Ninety-eight percent of the time, no one ever heard from folks again. This is about properties that are abandoned and what banks are required to do, again, by federal regulations, by local law, when a mortgagee abandons a property. We cannot have those houses just sitting vacant. And so this isn't about people being locked up. Thank you very much. Okay. I have a few minutes for rebuttal. I want to just address a few things first. Number one, we have asked that this court certify these questions with regard to the scope and the elements of the good faith defense. Did you ask the district court to do that? We did not. Is that preclusive of whether we can? We have to overcome a presumption that there's a compelling reason to do it now. I think that the district court's opinion actually provides that compelling reason because, frankly, it holds that Washington businesses, so long as they can say that they weren't aware that what they were doing was illegal, that they can assert a good faith defense. And I think that's a real problem under the Consumer Protection Act. The Washington Attorney General has joined us in our request that these claims be certified. It's a relatively new defense to be exported out of insurance bad faith claims. That's why all the cases that you see after Perry turn on whether or not there was bad faith. So we'd ask that it be certified so that it can be clear. If it is a defense at all after Hangman Ridge, we should know that. If it applies to deceptive conduct, we should know that. If it applies to per se conduct, we should know that. And I think that the Supreme Court is the best body to develop that case law. Just hypothetically, if we were to dismiss on standing, I assume you'd refile. Then you could ask the district court to certify those questions to the state Supreme Court. One of the problems with dismissal, and one of the reasons we're so concerned about that order, is by dismissing the Jameses after they've been added to the complaint, they will not be able to bring a class claim under China Agritech. If they had filed a separate claim at the time, at the same time that they had been amended into the complaint, they would have been within the statute of limitations and could have brought a class claim. That's one of the problems with the district court's order. So you think that you might be precluded from any class action here under China Agritech? That's exactly correct. And they should not be because the good faith defense does not apply to the common law trespass claim. And the only reason that the judge was unwilling to allow us to proceed with that was because of the erroneous standing ruling. And so it's an important ruling here. And especially from a sense of a judicial economy, which that's the policy that permeates all of these exceptions to this general rule. When you look at the Supreme Court cases, when you look at North Star, when you look at Second Circuit, it's what makes sense in terms of judicial economy. Should we make the plaintiffs refile? And the answer tends to be no. Here, if we have a rule that amending a pleading the way we did with the Jameses doesn't suffice understanding, then we have to file a new case. And that does not promote judicial economy. One other issue that North Star brought up, which is that maybe that the operative pleading to be looked at actually was the fourth amended complaint in our case. At 1047, North Star says, the present case involves the filing of a supplemental pleading that became the operative pleading in the case on which subject matter jurisdiction must be based. So there are two reasons why we think safeguard in the district court were wrong. Number one, there's an exception that we fall within to add a party to cure the jurisdictional or standing deficiency. And number two, the court should have been looking at the fourth amended complaint, which contained the Jameses, and no one has ever disputed that they didn't have standing. They survived a motion to dismiss. There was discovery taken from them. And, in fact, safeguards stipulated to the amendment to include them. I would ask that you would reverse that standing decision so we can go back and get this case back on all fours and moving forward. And to please certify the issue of what is a good faith defense to the Supreme Court, because I think we need that guidance. Thank you. We thank both parties for their argument. The case of Scott James and Noel James v. Safeguard Properties is submitted.
judges: Ikuta, R. Nelson, Hunsaker